UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00689-GNS

OPTIGENEX, INC.  PLAINTIFF

v.

FDL FULFILLMENT SERVICES UG, and
JOHN DOES Numbers 1 through 99  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Default Judgment against Defendant FDL Fulfillment Services UG (DN 52). The motion is now ripe for adjudication. For the reasons that follow, Plaintiff's motion is **GRANTED**.

### I. BACKGROUND

Plaintiff Optigenex, Inc. ("Optigenex") asserts federal law claims of trademark infringement, direct patent infringement, indirect patent infringement, inducement of patent infringement, unfair competition, and false advertising against Defendant FDL Fulfillment Services UG ("FDL"). (First Am. Compl. ¶¶ 4, 52-102, DN 17). Specifically, Optigenex claims that FDL has been manufacturing, marketing, and selling health supplement products containing Optigenex's patented botanical extract of Cat's Claw and bearing Optigenex's distinctive trademark, AC-11, without permission. (First Am. Compl. ¶¶ 7, 11-23).

Optigenex first brought this action on November 16, 2017. (Compl., DN 1). FDL is a German company with its principal place of business in Hamburg, Germany. (First Am. Compl. ¶ 5). Upon the filing of its original Complaint, service was returned executed on March 13, 2018,

1

having been effected on February 12, 2018.[1] (Summons 5, DN 11). Optigenex then filed its First Amended Complaint on September 13, 2018. (First Am. Compl.). It appears that FDL was also successfully served with the First Amended Complaint. (Pl.'s Mot. Default J. ¶ 2, DN 52; Pl.'s Mot. Extension Time 1, DN 23; Pl.'s Notice, DN 20; Pl.'s Summons Request Ex. 2, DN 19-2).

FDL having manifested no appearance in this case, Optigenex moved, on January 23, 2020, for an entry of default pursuant to Fed. R. Civ. P. 55(a), which the Clerk granted. (Pl.'s Mot. Entry Default 2, DN 50; Order, DN 51). Optigenex filed the current motion for default judgment on February 19, 2020 pursuant to Fed. R. Civ. P. 55(b)(2). (Pl.'s Mot. Default J. 2). Specifically, Optigenex seeks a judgment against FDL on the issue of liability and a permanent injunction to prevent FDL from engaging in the activity giving rise to Optigenex's claims in this case. (Pl.'s Mot. Default J. 1; First Am. Compl. 23-24).

## II. JURISDICTION

Federal question jurisdiction is afforded over Optigenex's claims against FDL. *See* 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1338.

## III. DISCUSSION

"Rule 55(b)(2) governs all cases in which the court enters a default judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2684 (rev. 4th ed. Aug. 2019 update). As Wright & Miller note:

> When an application is made to the court under Rule 55(b)(2) for the entry of the judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered. The ability of the court to exercise its discretion . . . is made effective by the two requirements in

---

[1] Service was made pursuant to Article 5 of the Hague Convention and Fed. R. Civ. P. 4(f)(1), which provides, "an individual . . . may be served at a place not within any judicial district of the United States[] by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]" (Summons, DN 11).

> Rule 55(b)(2) that an application must be presented to the court for the entry of judgment and that notice of the application must be sent to any defaulting party who has appeared.

10A Wright & Miller, *supra*, § 2685 (citations omitted); *see* Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment has appeared personally . . . that party . . . must be served with written notice of the application [for a default judgment] at least 7 days before the hearing."). Optigenex having successfully served FDL, having applied for and received an entry of default, and now having applied to the Court for default judgment, the question then becomes whether FDL has "appeared" in this action so as to be afforded the requisite notice regarding Optigenex's motion for default judgment.

FDL has not acted in any way to comport with the "appearance" requirement so as to be afforded seven days' notice of Optigenex's motion for default judgment. The only involvement of FDL in this case is its receipt of service; however, the successful execution of service in and of itself does not satisfy the appearance requirement. *See, e.g.*, *Baez v. S. S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir. 1975) (affirming district court's grant of default judgment even though service was properly executed). FDL is therefore not entitled to seven days' notice of Optigenex's motion for default judgment under Fed. R. Civ. P. 55(b)(2).

All that remains is determining whether default judgment should be granted in Optigenex's favor on the issue of liability, it damages, and for the issuance of a permanent injunction. Only if Optigenex's claims asserted against FDL are supported by sufficient factual content in Optigenex's complaint will liability on the part of FDL be established:

> The fact that a default is entered does not automatically result in plaintiff recovering what was demanded in the complaint. If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Liability is not deemed established simply because of the default . . . .

> The distinction between defendant's concession, by defaulting, of the facts in plaintiff's complaint and a finding that liability is established is an important one about which there exists some confusion. . . .
>
> . . . Even after default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.

10A Wright & Miller, *supra*, § 2688.1 (citations omitted). As mentioned, Optigenex asserts six different causes of action against FDL.

Optigenex first asserts a claim for trademark infringement pursuant to 15 U.S.C. § 1114(1)(a). (First Am. Compl. ¶¶ 52-61). Optigenex also asserts a claim of unfair competition pursuant to 15 U.S.C. § 1125(a). (First Am. Compl. ¶¶ 87-94). "The tests for trademark infringement and unfair competition under the Lanham Act are essentially the same." *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 610-11 (E.D. Pa. 2010) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)). "Specifically, to prove trademark infringement and unfair competition, a plaintiff must show that: '(1) [it] held the trademark; (2) [it] did not consent to the defendant's use of that mark; and (3) [the defendant's] use of the mark was likely to cause confusion among relevant customers.'" *La Bamba Licensing, LLC v. La Bama Authentic Mexican Cuisine, Inc.*, 295 F. Supp. 3d 756, 765 (W.D. Ky. 2018) (citations omitted).

Optigenex is an applied sciences company that licenses and markets a proprietary, patented botanical extract of Cat's Claw, which it markets and sells under its AC-11 trademark. (First Am. Compl. ¶ 11). Optigenex owns the AC-11 trademark. (First Am. Compl. ¶ 17; First Am. Compl. Ex. A, DN 17-1; First Am. Compl. Ex. B, DN 17-2). Optigenex asserts that FDL is, without permission, "using a mark identical in sound, meaning, appearance, and commercial impression and otherwise substantially similar to [Optigenex's] Mark in connection with an ingredient of

[FDL's] NooCube vitamin supplements and in the marketing and sale of their NooCube vitamin supplements" and on FDL's website which "markets NooCube for use in DNA repair." (First Am. Compl. ¶¶ 22-23). Upon review of Optigenex's trademark and FDL's mark, it does appear that FDL's mark is likely to cause confusion among relevant consumers regarding the origin of AC-11; FDL's NooCube product lists AC-11 as an ingredient and sometimes identifies that ingredient at "Cat's Claw" without any attribution to Optigenex. (First Am. Compl. 8-9). Liability is therefore established regarding Optigenex's trademark infringement and unfair competition[2] claims against FDL on Optigenex's well-pleaded facts.

Optigenex next asserts direct infringement of patent claims pursuant to 35 U.S.C. § 271(a). (First Am. Compl. ¶¶ 62-71). The owner of a United States patent is entitled to exclude others from making, using, or selling the patented invention in the United States. *Decca Ltd. v. United States*, 640 F.2d 1156, 1166 (Cl. Ct. 1980) (citing 35 U.S.C. § 154). Optigenex owns four relevant patents pertaining to its direct infringement of patent claims. (First Am. Compl. ¶¶ 24-31). "To state a claim for direct patent infringement, a plaintiff must allege sufficient facts that the accused

---

[2] Some courts recognize that "under [the Lanham Act], there is no specific Federal cause of action for unfair competition. Instead unfair competition under the Lanham Act is a category of claims consisting primarily of causes of action for false designation of origin and false advertising." *Pot Luck, L.L.C. v. Freeman*, No. 06 Civ. 10195(DAB), 2009 WL 693611, at *4 (S.D.N.Y. Mar. 10, 2009) (citations omitted); *see also Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272-73 (E.D.N.Y. 2014) (citations omitted). Guidance from this Court in *La Bamba*, however, dictates that this Court should allow Optigenex to assert a claim for unfair competition. *See La Bamba*, 295 F. Supp. 3d at 764-65. Additionally, when a plaintiff has asserted Lanham Act claims of trademark infringement, false advertising, and unfair competition, some courts will dismiss the plaintiff's claim for unfair competition as duplicative. *See, e.g., Sussman-Automatic*, 15 F. Supp. 3d at 273 (citations omitted). Although Optigenex has asserted all three of those claims, there does not appear to be an indication of a similar trend within the Sixth Circuit of that kind of dismissal. (First Am. Compl. ¶¶ 87-102); *see, e.g., Sazerac Brands, LLC v. Peristyle, LLC*, 892 F.3d 853, 856-60 (6th Cir. 2018) (reaching the merits of plaintiff's Lanham Act claims for trademark infringement, unfair competition, and false advertising); *Jae Enters., Inc. v. Oxgord Inc.*, No. 5:15-CV-228-TBR, 2016 WL 865328, at *2-5, *7-9 (W.D. Ky. Mar. 2, 2016) (same).

5

product contains 'elements identical or equivalent to each claimed element of the patented invention.'" *Stuart v. Rust-Oleum Corp.*, 272 F. Supp. 3d 1019, 1024 (S.D. Ohio 2017) (quoting *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). As mentioned, FDL's NooCube product, sold in the United States, contains an ingredient that it calls "AC-11" and sometimes identifies that ingredient as "Cat's Claw[.]" (First Am. Compl. 8-9 & ¶ 63). FDL's website additionally references "C-MED-100[,]" which is the previous name given by Optigenex to AC-11. (First Am. Compl. ¶ 38). FDL's website provides a detailed description of AC-11 that is almost identical to the way Optigenex describes AC-11 in its patents—namely, as an ingredient that can repair damaged DNA and enhance the DNA repair process. (First Am. Compl. ¶¶ 25, 27, 29, 31, 39-40). Optigenex has established FDL's liability on its direct infringement of a patent claims with well-pleaded facts by showing that FDL's AC-11 is identical or equivalent to Optigenex's AC-11.

Optigenex also asserts indirect infringement of patent claims pursuant to 35 U.S.C. § 271. (First Am. Compl. ¶¶ 72-86). Specifically, Optigenex styles Count III as a claim for "Indirect Infringement of U.S. Patent" and Count IV as "Inducement of Patent Infringement[.]" (First Am. Compl. 18-19). "Indirect Infringement[,]" however, is an umbrella term used to describe two types of indirect infringement of patent claims: "[The Patent Act] prohibits a person from indirectly infringing a patent. The two types of indirect infringement are induced infringement under § 271(b) and contributory infringement under § 271(c)." *Smart Wearable Techs. Inc. v. Fitbit, Inc.*, 274 F. Supp. 3d 371, 374 (W.D. Va. 2017) (internal citation omitted). It is possible to interpret Counts III and IV of Optigenex's Complaint as asserting duplicative claims of inducement of patent infringement, as both claims identify Section 271(b) as their bases and Count III is titled the more general term of "Indirect Infringement of U.S. Patent[.]" (First Am. Compl. 18).

6

However, "[a] court must construe pleadings 'so as to do justice' and liberally in order to prevent errors in draftsmanship from barring justice to litigants.'" (First Am. Compl. 18-19); *Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009) (quoting Fed. R. Civ. P. 8(e); *Ritchie v. United Mine Workers of Am.*, 410 F.2d 827, 833 (6th Cir. 1969)). Count III can be construed as asserting a claim for contributory patent infringement because contributory patent infringement is a claim falling within the general umbrella of indirect infringement of patent claims and, as discussed below, Optigenex has pleaded all the necessary facts to support such a claim.

"[A] party asserting induced infringement must 'prove that: (1) a third party directly infringed the asserted claims of the [relevant] patents; (2) [the defendant] induced those infringing acts; and (3) [the defendant] knew the acts it induced constituted infringement.'" *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1016 (N.D. Cal. 2019) (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016)). "To succeed on a contributory infringement claim, the patentee must establish: '(1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component has no substantial non-infringing uses, and (4) that the component is a material part of the invention.'" *Id*. at 1019 (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)). In *Ductmate Industries, Inc. v. Famous Supply Corp.*, 55 F. Supp. 2d 777 (N.D. Ohio 1999), the court expounded on the requisite mental state element that must be proven in asserting both kinds of claims:

> Potential liability for indirect infringement is triggered when the accused inducer "actively and knowingly aid[s] and abet[s] another's direct infringement." Furthermore, an accused inducer must actually intend to encourage infringement.
>
> Contributory infringement requires a similar specific intent. An accused contributory infringer must know that the patent at issue is especially adapted for a use that is both patented and infringing. Thus, both forms of indirect infringement

require that the accused indirect infringer have actual knowledge of the patents in question.

*Id*. at 786 n.10 (citations omitted) (emphasis omitted).

FDL, through its website, markets AC-11 to distributors, retailers, and consumers to offer for sale the NooCube supplement containing AC-11. (First Am. Compl. ¶¶ 38-40, 74, 76). The distribution and resale of AC-11 would constitute an act of direct infringement. *See Ziptronix, Inc. v. Omnivision Techs., Inc.*, 71 F. Supp. 3d 1090, 1094 (N.D. Cal. 2014) ("An act of direct patent infringement occurs when an entity 'without authority . . . offers to sell, or sells any patented invention, within the United States . . . .'" (quoting 35 U.S.C. § 271(a)). Regarding the mental state requirement, "[w]hile proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (citation omitted). Optigenex is the first and only business to produce and market a botanical extract of Cat's Claw in connection with the AC-11 trademark and has generated millions of dollars in revenue through sales throughout the United States and abroad. (First Am. Compl. ¶¶ 12-15). As Optigenex points out, FDL's touting of AC-11 in detail on its website suggests that FDL purposefully and illicitly sought to benefit from Optigenex's success with AC-11. (First Am. Compl. ¶¶ 38-43). There is nothing here to suggest AC-11 can be used in a "substantial non-infringing" way—the only uses of AC-11 are for it to be ingested or topically applied to repair damaged DNA and enhance the DNA repair process, ingestion being the exact use of FDL's NooCube. (First Am. Compl. ¶¶ 11, 22, 25, 27, 29, 31, 38-43). Finally, AC-11 is obviously a "material part of the invention" as it is the invention at issue here; AC-11 is also a material part of NooCube, as FDL so touts on its website. (First Am. Compl. ¶¶ 38-40). As such, Optigenex has satisfactorily established liability on the part of FDL on Optigenex's induced and contributory infringement of patent claims.

Lastly, Optigenex asserts a claim of false advertising pursuant to 15 U.S.C. § 1125(a). (First Am. Compl. ¶¶ 95-102). To prove a claim for false advertising under the Lanham Act:

> [A] plaintiff must establish that: (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Herman Miller, Inc. v. Palazetti Imps. & Exps., Inc.*, 270 F.3d 298, 323 (6th Cir. 2001) (citation omitted). FDL's identification of AC-11 as an ingredient in NooCube misleads customers into believing that "authentic" AC-11, i.e., Optigenex's AC-11, is an ingredient of that product. (First Am. Compl. ¶¶ 96-99). As mentioned, circumstantial evidence suggests that FDL sought to capture Optigenex's success with AC-11, a first-of-its-kind product that repairs damaged DNA and enhances the DNA repair process, through FDL's touting of the use of AC-11 in its NooCube product on its website. (First Am. Compl. ¶¶ 25, 27, 29, 31, 38-43). FDL's use of AC-11 in this way has diverted customers from Optigenex which has sold approximately 60 metric tons of AC-11 to manufacturers, distributors, and retailers, generating millions of dollars in revenue from no less than 50 states and 25 countries. (First Am. Compl. ¶¶ 13, 102). Optigenex has satisfactorily established liability on the part of FDL on its false advertising claim.

In conclusion, Optigenex has established FDL's liability on all of Optigenex's claims against FDL. Default judgment will therefore be granted in favor of Optigenex as liability on all of its claims against FDL.

As a final matter, Optigenex seeks an equitable remedy of a permanent injunction at this time. (Pl.'s Mot. Default J. 1). In a patent and trademark infringement case:

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered

> an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted); *see also CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1072 (E.D. Mich. 2011) (relying on *Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir. 2010), to apply *eBay* test in trademark infringement cases after *eBay* test originally arose from a patent infringement action). "Injunctive relief is the Sixth Circuit's preferred remedy for trademark and unfair competition cases." *La Bamba Licensing*, 295 F. Supp. 3d at 770-71 (citing *Audi AG v. D'Amato*, 469 F.3d 534, 550-51 (6th Cir. 2006)).

Irreparable harm is satisfied here because "[t]he value of a company's reputation cannot be measured in damages; only an order to cease the infringing conduct can remedy that harm." *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 2 F. Supp. 3d 1029, 1033 (E.D. Mich. 2014) (citing *D'Amato*, 469 F.3d at 550; *Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553 (6th Cir. 2013)). The no-adequate-remedy-at-law element is also satisfied here: "With regard to the second factor [i.e., no adequate remedy at law], the Sixth Circuit has explained that where there is potential for future harm from infringement, there is no adequate remedy at law." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 883 (S.D. Ohio 2007) (citing *D'Amato*, 469 F.3d at 550). Furthermore, "a [d]efendant['s] use of a website to carry out its infringing activities" supports a finding that no adequate remedy at law besides the granting of a permanent injunction exists. *Id.* at 882-83. The balance of hardships favors the granting of a permanent injunction, as well:

> "With regard to the balance of hardships [in an action under the Copyright Act and Lanham Act], . . . a permanent injunction is warranted because there is no harm to the Defendant inasmuch as an injunction will merely require Defendant to comply with the Copyright Act and Lanham Act. In contrast, [Plaintiff] faces hardship from loss of sales."

*Id*. at 883 (citing *Capitol Records, Inc. v. Zahn*, No. 3:06-0212, 2007 WL 542816, at *4 (M.D. Tenn. Feb. 16, 2007); *Audi*, 469 F.3d at 550). "Finally, it is in the public's interest [in an infringement action] to issue a permanent injunction. . . . [E]njoining [a] [d]efendant's use of [a plaintiff's] trademarks would advance two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Id*. (citing *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006)). Thus, a permanent injunction is warranted here.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Default Judgment against Defendant FDL Fulfillment Services UG (DN 52) is **GRANTED**. Plaintiff Optigenex, Inc. is awarded default judgment against Defendant FDL Fulfillment Services UG on the issue of liability as to all claims as asserted in the First Amended Complaint.

2. Within **twenty-one (21) days** of the entry of this Memorandum Opinion and Order, Plaintiff shall submit admissible evidence of its damages, and upon receipt, the Court will determine whether a hearing is necessary to address the issue of damages.

3. Defendant FDL Fulfillment Services UG, its agents, servants, employees, successors, assigns, and all others in active concert and privity with it, are hereby **PERMANENTLY ENJOINED** from: (1) infringing on Plaintiff's AC-11 trademark, without authorization, whether in connection with the NooCube supplement or otherwise, individually without limitation by importation; (2) directly or indirectly infringing on Plaintiff's patents, and from manufacturing, importing, selling, offering to sell and otherwise using Plaintiff's patents without authorization, whether in connection with the NooCube supplement or otherwise; and (3)

engaging in false advertising, unfair competition, and deceptive trade practices in connection with the NooCube supplement or otherwise.

Greg N. Stivers, Chief Judge
United States District Court

April 9, 2020

cc:     counsel of record